IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BLUE CROSS BLUE SHIELD ASSOCIATION, <br>                 Plaintiff, <br><br> v. <br><br> WILLIAM JOSEPH COX, <br>                 Defendant. | CIVIL ACTION NO. <br> 07 CV 0533 |

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS**

Defendant William Joseph Cox respectfully submits the following brief in support of his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (7).

<u>Introduction</u>

This motion to dismiss is based on the Court's lack of subject matter jurisdiction. This case is essentially an effort to manufacture jurisdiction in federal court over a state law cause of action. Plaintiff Blue Cross Blue Shield Association ("BCBSA") bases jurisdiction in this suit on both federal question and diversity jurisdiction. Complaint, ¶¶ 6, 7. Neither basis for jurisdiction is available.

Federal question jurisdiction is unavailable because the Supreme Court recently construed FEHBA as not providing federal question jurisdiction over a

materially identical suit.  <u>Empire Healthchoice Assurance, Inc. dba Empire Blue Cross Blue Shield v. McVeigh</u>, 126 S.Ct. 2121 (June 15, 2006).

Diversity jurisdiction is also lacking.  This is because defendant Cox's contractual relationship is *not* with BCBSA, but with Blue Cross Blue Shield of Georgia ("BCBSGa"), a corporation whose principal place of business is in Georgia, and which is therefore not diverse.  BCBSGa has the contractual right to proceed against Mr. Cox, and this case should be dismissed because otherwise, Mr. Cox is exposed to "a substantial double, multiple, or otherwise inconsistent obligations."  Fed. R. Civ. P. 19(a) and (b).

Statement of Pertinent Facts

Defendant William Joseph Cox was severely injured by intestinal perforation during a hernia repair procedure in 2002.  Complaint, ¶¶ 9, 10.  He was insured then, and at all relevant times thereafter, under the Blue Cross Blue Shield Federal Employee Program.  Cox Decl., ¶ 1.  "Local Blue Cross and Blue Shield entities, including [Blue Cross Blue Shield of Georgia], administer the Plan in their particular localities pursuant to a federal government contract entered on their behalf by the Blue Cross and Blue Shield Association ('BCBSA') with the United States Office of Personnel Management ('OPM')."  Br. of Empire

HealthChoice Assurance, Inc.,[1] at 3 in <u>Empire Healthchoice Assurance, Inc. dba</u>

<u>Empire Blue Cross Blue Shield v. McVeigh</u>, 126 S.Ct. 2121 (June 15, 2006).

As detailed below, Mr. Cox was insured by BCBSGa, not by the plaintiff

BCBSA.  The precise corporate name of the entity acting under the trade name

"Blue Cross Blue Shield of Georgia" is uncertain, but whether it is Blue Cross

Blue Shield Healthcare Plan of Georgia, Inc. or Blue Cross and Blue Shield of

Georgia, Inc.,[2] it is in any case a Georgia corporation whose principal place of

business is in Georgia.[3]  "Blue Cross Blue Shield Association is a not-for-profit

corporation organized under the laws of the State of Illinois.  Its members are

forty-four independent, local organizations which operate 'Blue Cross' and/or

'Blue Shield' health plans across the nation."  Corporate Disclosure Statement in

Appellate Brief of BCBSA in <u>Wang v. Blue Cross Blue Shield Ass'n</u>, 55 Fed.

Appx. 802 (9th Cir. 2001), which is available at 2001 WL 34103337.  It also

---

[1] Available online at <http://supreme.lp.findlaw.com/supreme_court/briefs/05-200/05-200.mer.pet.pdf>.

[2] Both names appear at the bottom of the web page for BCBSGa.  See <http://www.bcbsga.com/home-visitors.html>.  As seen further below, this is not the only instance of playing fast and loose with corporate identity.

[3] See Georgia Secretary of State's Database at <http://corp.sos.state.ga.us/corp/soskb/Corp.asp?688743> for the former, and <http://corp.sos.state.ga.us/corp/soskb/Corp.asp?683305> for the latter.

describes itself as "the trade association for the independent, locally operated Blue Cross and Blue Shield Plans."[4]

Although BCBSA implies that it is the party entitled to seek reimbursement under the terms of the various health plans it attached as Exhs. B, C, D, E, and F (covering years 2002-2006), all of the documents attached to the complaint, as well as the documents attached to the declaration of defendant Cox, show that the party entitled to enforce the terms of those plans is BCBSGa, not BCBSA.  Those terms show the following:

    * BCBSA entered into the agreement with OPM "on Behalf of, and *as Agent for*, Participating Blue Cross and/or Blue Shield Plans."  Complaint, Exh. A, Cover Sheet (emphasis added).  Thus the principal under this contract that is relevant to this case is BCBSGa, not BCBSA.  The contract expressly contemplates that the "carrier" (BCBSA) may subcontract its responsibilities.  Id, ¶ 1.16.

    * On the first page of each annual service benefit plan following the table of contents, under the topic "Introduction," the plan states: "This Plan is underwritten by participating Blue Cross and Blue Shield Plans (Local Plans) that administer this Plan on behalf of the Blue Cross and Blue Shield Association (the Carrier).

---

[4] <http://www.fepblue.org/aboutus/aboutus.html>.

Complaint, Exh. B, p. 3; Exh. C, p. 4; Exh. D, p. 4; Exh. E, p. 4; Exh. F, p. 4.

    \* The reimbursement term itself uses "we" or "us" to describe the party entitled to any reimbursement, and the "we" or "us" that have this right is the same "we" or "us" who provided the benefits in the first place, namely, BCBSGa in this case: "[I]f we pay benefits . . .[, a]ll recoveries you obtain . . . must be used to reimburse us in full for benefits we paid." See Complaint, ¶ 14; Exh. B, p. 109; Exh. C, p. 105; Exh. D, p. 108; Exh. E, p. 109; Exh. F, p. 109. BCBSA does not allege that it paid any of those benefits. BCBSGa paid them. Any right to reimbursement belongs to BCBSGa, not to BCBSA, under these plain terms.

    \* In ¶ 17 of the Complaint, BCBSA states that "the Plan (through an agent)" wrote about the Plan's right of reimbursement on August 19, 2005. The letter to which it refers identifies the Health Plan as "Blue Cross Blue Shield of Georgia" and claims that this "Health Plan . . . has a right to be reimbursed . . . for the benefits it has paid . . . ." Cox Declaration, ¶5 & Exh. D. The letter does not mention BCBSA as the party entitled to collect the debt.

    \* In ¶ 21 of the Complaint, BCBSA states that "an attorney for an agent of the Plan" wrote about the Plan's right of reimbursement on May 31, 2006. The letter to which it refers likewise identifies the Health Plan as "Blue Cross Blue

Shield of Georgia," and each of the 37 pages of itemized expenditures shows BCBSGa as the plan.  Cox Declaration, ¶6 & Exh. E.  The letter does not mention BCBSA as the party entitled to collect the debt.[5]

Mr. Cox's evidence shows, likewise, that his contract is with BCBSGa rather than BCBSA.  Cox Declaration, ¶¶ 1, 7.  His membership card is with BCBSGa, not BCBSA.  Id., ¶ 2 & Exh. A.  This is decisive because each of the "brochures" attached to the complaint state that "Our telephone number and address are shown on the back of your Service Benefit Plan ID card."  Complaint Exh. B, p. 7;  Exh. C, p. 7; Exh. D, p. 7; Exh. E, p. 8; Exh. F, p. 8.  His directory of service providers is with BCBSGa, and the only reference to BCBSA in that document states that BCBSGa is an independent licensee of BCBSA.  Id., ¶ 3 & Exh. B.  All of his Explanation of Benefit (EOF) forms show that BCBSGa administers and pays his benefits.  Id., ¶ 4 & Exh. C.

Despite the voluminous complaint, BCBSA does not allege, let alone pro-duce, one document by which defendant Cox was liable to repay BCBSA for the

---

[5] Since BCBSA cites these letters showing that BCBSGa is entitled to collect the alleged debt, Fed. R. Civ. P. 19(c) required it to identify BCBSGa in its pleadings and to explain why BCBSGa was not joined as a party.  BCBSA does not merely violate this duty -- it goes out of its way to conceal the involvement of BCBSGa in this case by vague circumlocutions such as "an agent" of "the Plan."

money that BCBSGa paid for his medical benefits.  It cites § 2.5 of its contract

with OPM (Complaint, ¶ 15), but there is no allegation that Mr. Cox was a party to

that contract.  On the contrary, it states that BCBSA's subrogation rights are

governed by the terms of the "brochures" which are attached to the Complaint at

Exhibits B-F, each of which gives rights only to BCBSGa.

Argument and Citation of Authority

**1.      The Court Lacks Federal Question Jurisdiction.**

For several years before 2006, federal courts were divided on the question

of whether reimbursement claims based on FEHBA-governed contracts were

analogous to those arising under ERISA-governed plans, which were held to

completely preempt state law, or whether they were governed by state law.  Al-

though FEHBA contained no provisions remotely similar to the detail of 29 U.S.C.

§ 1132, several courts construed FEHBA analogously with ERISA, thus as gov-

erned by federal law that completely preempted state law,[6] though other courts

---

[6] The McVeigh Court cited these cases as upholding federal jurisdiction: Blue Cross & Blue Shield of Illinois v. Cruz, 396 F.3d 793, 799-800 (7th Cir. 2005), Caudill v. Blue Cross & Blue Shield of North Carolina, 999 F.2d 74, 77 (4th Cir. 1993), and Medcenters Health Care v. Ochs, 26 F.3d 865 (8th Cir. 1994).  There were also other cases relying on ERISA's preemption provision to interpret and apply FEHBA's preemption provision: Pharm. Care Mgmt. Ass'n v. Rowe, 429 F.3d 294, 299 n.2 (1st Cir. 2005) (holding that FEHBA's preemption is "nearly identical" to ERISA's); Botsford v. Blue Cross & Blue Shield of Mont., Inc., 314

reached the opposite conclusion.

Less than a year ago, the Supreme Court resolved the conflict.  Empire Healthchoice Assurance, Inc. dba Empire Blue Cross Blue Shield v. McVeigh, 126 S.Ct. 2121 (June 15, 2006).   In this case, Empire Health Choice (a regional Blue Cross company, like BCBSGa here) sought reimbursement of $157,309 that it had paid on behalf of Joseph McVeigh, who was injured in an auto accident in 1997, and whose claim generated a tort settlement of $3,175,000.  Id. at 2129.  Empire sought recovery of the full sum without reduction for attorney's fees or other litigation costs,[7] and it pled that the federal district court had jurisdiction because the claim arose under FEHBA.  Id. at 2129-30.  The district court dismissed the claim for lack of federal question jurisdiction, and the Second Circuit affirmed. Id. at 2130.  The Supreme Court affirmed.  It summarized its decision that 28 U.S.C. § 1331 does not encompass an action for reimbursement thus:

> [C]laims of this genre, seeking recovery from the proceeds of state-court litigation, are the sort ordinarily resolved in state courts.  Feder-al courts should await a clear signal from Congress before treating

F.3d 390, 393 (9th Cir. 2002); Blue Cross & Blue Shield, Inc. v. Department of Banking & Finance, 791 F.2d 1501, 1504 (11th Cir. 1986).

[7] The plan stated: "All recoveries you obtain (whether by lawsuit, settlement, or otherwise), no matter how described or designated, must be used to reimburse us in full for benefits we paid."

such auxiliary claims as "arising under" the laws of the United States. Id. at 2127.  It reasoned that "uniform federal law need not be applied to all questions in federal government litigation, even in cases involving government contracts." Id. at 2131-32.  It agreed with the Second Circuit's conclusion that Empire's showing failed to demonstrate a "significant conflict . . . between an identifiable federal policy or interest and the operation of state law" to require displacement of state law.  Id. at 2132-33.  And because "the reimbursement right in question, predicated on a FEHBA-authorized contract, is not a prescription of federal law," id. at 2134, there should be no need for a state court to use any law except state law to determine the validity and extent of a FEHBA reimbursement claim.  Furthermore, unlike ERISA, which gives full jurisdiction over all claims under 29 U.S.C. § 1132 to district courts (29 U.S.C. § 1132(e)), FEHBA gives jurisdiction to district courts only for claims against the federal government (§ 8912).  Id. at 2129, 2134-35.  Likewise, unlike ERISA, FEHBA's preemption clause (8902(m)(1)) merely "displace[s state law] on matters of 'coverage or benefits.'"  Id. at 2128-29.  It "does not purport to render inoperative *any and all* State laws that in some way bear on federal employee-benefit plans." Id. at 2135-36 (original emphasis).  Because displacement of applicable state law is "atypi-

cal," if Congress intends to accomplish this result, it must make the intention

sufficiently clear, which it had not done.  Id. at 2135.

BCBSA alleges no other reason to think that there is federal question juris-

diction over this suit.  Therefore, 28 U.S.C. § 1331 does not sustain this suit.

**2.      The Court Lacks Diversity Jurisdiction.**

The Court also lacks jurisdiction under 28 U.S.C. § 1332 because the two

real parties to this contract, BCBSGa and William Joseph Cox, are both residents

of Georgia.

**a.      BCBSGa is Indispensable.**

There is no doubt that BCBSGa has standing to pursue this identical cause

of action against Mr. Cox.  BCBSA entered the contract with OPM "on Behalf of,

and as Agent for" participating plans like BCBSGa.  Complaint, Exh. A, Cover

sheet.[8]  BCBSGa paid some of Mr. Cox's medical bills, and the terms of the reim

---

[8] This raises a significant question of BCBSA's Article III standing to proceed
with this litigation.
> It is a general principle of law that, if an agent acts within the scope
> of his actual or apparent authority and enters into a contract on behalf
> of his principal, the contract is that of the latter.  All the rights and
> obligations which arise under it are those of the principal, and *the*
> *agent cannot enforce the contract*, neither is he bound by it.
> Williston on Contracts, vol. 1, Sec. 281.

Dietrich v. United States Shipping Board Emergency Fleet Corp., 9 F.2d 733, 739
(2d Cir. 1925) (emphasis added).  It is unnecessary to pursue this inquiry at this

bursement provision in Exh.s B-F of plaintiff's complaint give the payor a right of reimbursement.  BCBSGa filed suit on the same claim in <u>Blue Cross Blue Shield Health Care Plan of Georgia, Inc. v. Noles</u>, Case No. 5:05-cv-122, 2006 WL 1539776 (M.D. Ga., May 31, 2006).  The regional Blue Cross companies sought reimbursement for identical claims in the <u>McVeigh</u> case, discussed in Part 1 above, as well as in <u>Blue Cross & Blue Shield of Illinois v. Cruz</u>, 396 F.3d 793, 799-800 (7th Cir. 2005), and other cases noted in various district courts.  Based on all of the documentary evidence in this case, BCBSGa is the proper plaintiff to pursue the cause of action alleged in this case.

BCBSGa is an indispensable party.  In BCBSGa's absence, Mr. Cox is "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."  Fed. R. Civ. P. 19(a)(2)(ii).  BCBSA seeks $894,139.36 from Mr. Cox.  Complaint, ¶23 & p. 11.  BCBSGa also seeks $894,139.38 from Mr. Cox.  See Complaint, ¶21; Cox Declaration, ¶6 & Exh. E.  Mr. Cox needs to be protected from exposure to these multiple and inconsistent obligations.  In this connection, but where the shoe was on the other foot, see <u>Bridges v. Blue Cross and Blue Shield Assn.</u>, 889 F.Supp. 502, 504 (D.D.C. 1995) (holding that in a suit

---

time because the undisputable facts show that the case should be dismissed on jurisdictional grounds.

against BCBSA for violating its contract, OPM needed to be added as an indispensable party because otherwise BCBSA would be exposed to inconsistent obligations).  See also <u>Dernick v. Bralorne Resources, Ltd.</u>, 639 F.2d 196, 199 (5th Cir. 1981) ("[W]here the subsidiary was the primary participant in the events giving rise to the lawsuit[, f]ailure to join the subsidiary in such circumstances would be improper.").

    **b.**    **BCBSGa Cannot Be Joined.**

This Court would lack diversity jurisdiction over a suit by BCBSGa against Mr. Cox.  Under 28 U.S.C. § 1332(c), a corporation is a citizen of two states, the state in which it is incorporated and the state in which it has its principal place of business.  <u>United Steelworkers v. R.H. Bouligny, Inc.</u>, 382 U.S. 145, 148 n.4 (1965).  Since BCBSGa is an indispensable party, and since it is a Georgia resident under both approaches as shown above, the Court lacks jurisdiction for the same reason.

> As with any federal action, diversity of citizenship is determined by reference to the parties named in the proceeding before the district court, as well as any indispensable parties who must be joined pursuant to Rule 19 of the Federal Rules of Civil Procedure.  Where joinder of a party would destroy subject matter jurisdiction, the court must dismiss the action if that party is 'indispensable' to the litigation.

<u>MS Dealer Service Corp. v. Franklin</u>, 177 F.3d 942, 946 (11th Cir. 1999), citing

<u>Doctor's Assocs., Inc. v. Distajo</u>, 66 F.3d 438, 445 (2d Cir.1995).

The conclusion that BCBSGa's role defeats diversity jurisdiction is con-

firmed by BCBSA's violation of Fed. R. Civ. P. 19(c), which requires a plaintiff to

"state the names, if known to the pleader, of any persons as described in [Rule

19(a) ] who are not joined, and the reasons why they are not joined."  As the First

Circuit has stated,

> We are engaged in a lawsuit, not in a poker game, and if plaintiff
> chooses not to recite the facts about the other beneficiaries under
> these circumstances particularly where she was obligated to do so by
> F.R.Civ.P. 19(c), we will assume that there are other beneficiaries
> who, if joined, would destroy diversity.

<u>Stevens v. Loomis</u>, 334 F.2d 775, 776, n.1 (1st Cir.1964).  "[H]aving failed to

comply with its obligation to explain in its pleadings why it did not join parties

who, on the face of the pleadings, have an obvious interest in this matter, see

Fed.R.Civ.P. 19(c), plaintiff must suffer an adverse inference on this score."

<u>Televisa, S.A. de C.V. v. Koch Lorber Films</u>, 382 F.Supp.2d 631, 634 (S.D.N.Y.

2005).

    **c.**    **The Case Should be Dismissed.**

Because BCBSGa cannot be made a party without destroying jurisdiction,

Fed. R. Civ. P. 19(b) requires that the Court analyze whether the claim can be maintained in its absence.  The first factor, prejudice to Mr. Cox, is evident, in that he is threatened with multiple lawsuits and multiple or inconsistent obligations if this case continues and if BCBSGa files suit in state court.

Second, that prejudice cannot be avoided or mitigated because BCBSGa is independent.  It would not be bound by the judgment of this Court.

Third, a judgment rendered in BCBSGa's absence would not be adequate to protect Mr. Cox from multiple litigation for the reasons just given.

Finally, "the most persuasive factor" which is "particularly compelling in diversity jurisdiction cases" (Tick v. Cohen, 787 F.2d 1490, 1495 & n.5 (11th Cir. 1986)) is that BCBSA has an adequate remedy if this case is dismissed: it may assert any rights it has against Mr. Cox in a state court, where the claim of BCBSGa may be joined with it.  Since the Supreme Court has held that "the proper forum" for "claims of this genre" is a state court, Empire Healthchoice, 126 S.Ct. at 2126, 2127, the defendant respectfully submits that this case should be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, BCBSA's attempt to manufacture subject matter

jurisdiction should be refused.  This case should be dismissed.

Respectfully submitted, this April 16, 2007.


s/ Charles M. Cork, III

830 Mulberry St., Suite 203          Ga. Bar No. 187915
Macon, Georgia 31201                 Attorney for Defendants
(478) 742-0204
(478) 742-0190 (fax)
cmcork3@mindspring.com

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1D, I certify that this brief has been prepared with one of the fonts and point selections approved by the court in LR 5.1C, namely, Times New Roman 14.

s/ Charles M. Cork, III


## CERTIFICATE OF SERVICE

I certify that on April 16, 2007, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to registered counsel of record.

s/ Charles M. Cork, III